# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 08-22113-CIV-TORRES

UNDERWRITERS AT INTEREST
SUBSCRIBING TO CERTIFICATE
No. 3860-7800-0000-0025 etc.,

      Plaintiff,

vs.

SEABOARD MARINE LTD.,

      Defendant/3rd Party Plaintiff,

vs.

NEWPORT TRUCKING, INC.,

      3rd Party Defendant and
      4th Party Plaintiff,

vs.

UNDERWRITERS AT LLOYD'S LONDON,
Certificate No. NA071354 consisting of
Syndicates No. 2791 and 510,

      4th Party Defendant.

_____/

# ORDER GRANTING FOURTH-PARTY
# DEFENDANT'S MOTION TO DISMISS

This matter came before the Court on March 3, 2009, for a hearing on Fourth-Party Defendant Underwriters at LLoyd's, London, Subscribing to Certificate No. NA071354 ("Underwriters") Motion to Dismiss the Fourth-Party Complaint [**D.E. 15**], pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can

be granted.  We have considered the motion, response, and reply thereto, the argument of counsel at the March 3rd hearing, and the record in this case.  We grant Underwriter's motion to dismiss the Fourth-Party Complaint for the following reasons.

## I.   BACKGROUND

Underwriters issued a motor truck cargo policy to Fourth-Party Plaintiff Newport Trucking, Inc. ("Newport"), Policy No. NA071354, effective May 7, 2007 to May 7, 2008 (the "Policy").  [D.E. 11 (Fourth-Party Complaint) ¶ 5; D.E. 15-2].[1]  Under the Policy, Underwriters "agree[d] to indemnify [Newport] for ALL RISKS OF PHYSICAL LOSS OR DAMAGE FROM AN EXTERNAL CAUSE to lawful cargo in and/or on a truck whilst in [Newport's] care, custody or control . . . ."  [D.E. 15-2 at 9; D.E. 11 ¶ 7].

After Newport was served by Third-Party Plaintiff Seaboard Marine Ltd. ("Seaboard") with a Third-Party Complaint alleging Newport's liability for cargo loss (the "Lawsuit"), Newport tendered the summons and complaint to Underwriters for defense and resolution of the underlying claim.  [D.E. 11 ¶ 5].  The Policy provides that

---

[1]     Newport cited provisions of the Policy in its Fourth-Party Complaint and attached the pertinent clauses from the Policy as Exhibit 1 to its complaint.  [D.E. 11 at 8].  Underwriters attached a complete copy of the Policy as Exhibit A to its motion to dismiss.  [D.E. 15-2].  Ordinarily, we would not consider anything beyond the face of the complaint and documents attached thereto when ruling on a 12(b)(6) motion to dismiss.  *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997); *Federal Ins. Co. v. Bonded Lightning Prot. Sys., Inc.*, No. 07-80767-CIV, 2008 WL 5111260, at *3 (S.D. Fla. Dec. 3, 2008).  But where the plaintiff refers to a document in its complaint and that document is central to the plaintiff's claim, as is the case here, then we may consider the document part of the pleadings for purposes of 12(b)(6) and "the defendant's attaching such document[] to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."  *Brooks*, 116 F.3d at 1369.

"[i]f legal proceedings be taken to enforce a claim against [Newport] as respects any such loss or damage, [Underwriters] reserve the right at their option without expense to [Newport], to conduct and control the defense on behalf of and in the name of [Newport]." [D.E. 15-2 at 14; D.E. 11 ¶ 8]. Underwriters thereafter denied Newport's request to defend under the Policy and "further, effectively denied Newport any coverage under the policy by reserving its rights on coverage issues and not actually conducting any investigation or resolving the claim." [D.E. 11 ¶ 5].

Newport's Fourth-Party Complaint contains two counts, for declaratory judgment (Count I) and breach of contract (Count II). Count I alleges that Underwriters has refused to defend the Lawsuit and indirectly denied any responsibility for resolving the underlying claim, thereby failing to perform its contractually-assumed fiduciary duty to Newport. [*Id.* ¶ 9]. As a result, Newport alleges it has been forced to pay monies (in addition to the insurance premium to Underwriters) to protect its interests and business obligations which, contractually, had been assumed by Underwriters. [*Id.* ¶ 10]. Newport asks us to determine Underwriters' fiduciary responsibility to Newport under the Policy; whether Underwriters has a duty to defend Newport in the Lawsuit or the absolute right to unilaterally refuse to defend; and whether or not Underwriters can deny coverage to Newport in a unilateral manner without justification other than the opinion of its agent. [*Id.* ¶ 11].

Count II alleges that Underwriters breached the Policy by failing to promptly investigate and resolve the underlying claim and by refusing to defend Newport in the

Lawsuit. [*Id.* ¶ 12]. As a result, Newport claims it is suffering damages and will possibly suffer additional damages depending on the length, cost, and result of the Lawsuit. [*Id.*].

Underwriters has moved to dismiss the Fourth-Party Complaint pursuant to Rule 12(b)(6). It argues that Newport cannot state a claim for breach of contract for Underwriters' refusal to defend Newport in the Lawsuit because Policy explicitly reserves the right of Underwriters to conduct the defense at its option but does not create a duty to defend. Underwriters also argues that Newport cannot state a claim for breach of contract for Underwriters' alleged failure to indemnify because the Policy is an "indemnity for loss" policy and, as such, only provides for indemnification *after* Newport becomes liable to pay and has actually paid for a loss. Underwriters points out that Newport has not alleged that it was compelled to pay or has actually paid for any loss and, therefore, it has failed to plead facts sufficient to trigger the covering provision of the Policy or cause Underwriters to be liable to Newport in any way.

Additionally, Underwriters notes that the declaratory judgment count contains the same allegations as the breach of contract count. But, Underwriters posits, because the Policy does not create a duty to defend and Newport has not alleged facts sufficient to trigger coverage or cause Underwriters to be liable to Newport under the Policy, Newport has failed to allege a substantial continuing controversy between the parties. Consequently, Underwriters suggests we do not have jurisdiction and should refrain from exercising our jurisdiction to issue a declaratory judgment. Furthermore, Underwriters claims that Newport is requesting an adjudication of past conduct in that

the declaratory judgment claim is simply a dressed-up breach of contract claim and therefore not suitable for determination via declaratory judgment.

## II.   ANALYSIS

The purpose of a motion under Rule 12(b)(6) is to test the facial sufficiency of a complaint.  The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted.  It should be read alongside Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 27 S. Ct. 1955, 1965 (2007).  Fed. R. Civ. P. 10(c) allows reference and incorporation of pleadings and exhibits in the same case, but does not circumvent the definiteness requirement of Rule 8(a)(2).

Pursuant to *Twombly*, to survive a 12(b)(6) motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." 127 S. Ct. at 1965.  Although a claim challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff (or a fourth-party plaintiff in this case) is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting *Twombly*,

127 S. Ct. at 1964-65).  We "must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003).  Dismissal for failure to state a claim upon which relief can be granted is warranted when the factual allegations of the complaint affirmatively disprove the alleged cause of action.  *Morse, LLC v. United Wisconsin Life Ins. Co.*, 356 F. Supp. 2d 1296, 1299 (S. D. Fla. 2005) (exhibits attached to complaint negated party's claim that a contract existed between the parties, but dismissal of the breach of contract claim was not appropriate in that case because the claim was not premised entirely on the existence of a written contract).

> ### A.    ***Breach of Contract***
>
> #### 1.    ***Duty to Defend***

Newport alleges that Underwriters breached the Policy by refusing to defend Newport in the Lawsuit.  The duty to defend arises only from contract or statute; it is not a common law duty.  *PT Indonesia Epson Indus. v. Orient Overseas Container Line, Inc.*, No. 99CV3373, 2002 WL 561376, at *2 (S.D. Fla. April 11, 2002) (citing *Allstate Ins. Co. v. RJT Enter., Inc.*, 692 So. 2d 142, 144 (Fla. 1997)).  As there is no applicable statute, we must examine the language of the Policy to determine whether the parties contracted to impose a duty to defend on Underwriters.  When the language of an insurance contract is clear and unambiguous, a court must interpret it according to its plain meaning, giving effect to the policy as it was written.  *East Fla. Hauling, Inc. v. Lexington Ins. Co.*, 913 So. 2d 673, 676 (Fla. 3d DCA 2005) (citing *Swire Pacific Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)).  Any ambiguity will

be resolved in favor of the insured.  *Id.*  We must give "practical, sensible interpretations of the policy in accordance with the natural meanings of the words employed."  *PT Indonesia*, 2002 WL 561376, at *2 (internal citation omitted).

The Policy provides in pertinent part:

**GENERAL CONDITIONS**

\* \* \*

9)     **PRIVILEGE TO ADJUST WITH OWNER** - In the event of loss or damage to property of others held by [Newport] for which claim is made upon the Underwriters the right to adjust such loss or damage with the owner or owners of the property is reserved to the Underwriters and the receipt of such owner or owners in satisfaction thereof shall be in full satisfaction of any claim of [Newport] for which such payment has been made.  *If legal proceedings be taken to enforce a claim against [Newport] as respects any such loss or damage, the Underwriters reserve the right at their option without expense to [Newport], to conduct and control the defense on behalf of and in the name of [Newport].*  No action of the Underwriters in such regard shall increase the liability of the Underwriters under this policy, nor increase the limits of liability specified in the policy.

[D.E. 15-2 at 14 (emphasis supplied)].  Newport argues that the highlighted sentence is but one part of a clause that deals with the reservation of Underwriters' right to control the investigation and resolution of the case with the cargo owner *or, in the alternative*, if a lawsuit is brought  (perhaps because Underwriters refused or failed to resolve the cargo claim) to defend Newport by assuming the duty to defend.  [D.E. 19 at 7].  "It is actually part of an alternative, but connected, methods [sic] of the insurer dealing with and controlling the investigation and resolution of a cargo claim under the policy."  [*Id.*].

We disagree with Newport on this point. Paragraph 9 reserves to Underwriters the right to adjust a claim for loss or damage with the owner or owners of lost or damaged property held by Newport *and* the right "at their option" to conduct and control the defense if legal proceedings are taken to enforce a claim against Newport. The only reasonable interpretation of Paragraph 9 is that it reserves to Underwriters the right *to do both*. The word "or" appears in Paragraph 9 only in connection with "loss or damage" and "owner or owners;" it does not appear in connection with Underwriters' rights and obligations under this provision of the Policy. Newport's suggestion that this clause allows Underwriters to either control the investigation and resolve the claim with the cargo owner *or* defend Newport if a lawsuit is filed is not reasonable. The "practicable, sensible interpretation" of the relevant sentence in Paragraph 9, "in accordance with the natural meaning of its language," is that it gives Underwriters an "option" to defend or, stated differently, it gives Underwriters the option to *not* provide a defense in an action against Newport.

In *PT Indonesia*, Judge Jordan considered a motor truck cargo policy that provided that in the event legal action was commenced against the insured for cargo loss or damage, the insurer "reserves the right at its sole option to defend such action . . . ." 2002 WL 561376, at *1. Judge Jordan concluded that the clause, which explicitly reserved to the insurer the right to defend actions at its sole option, gave the insurer "the option not to provide a defense for an action against" the insured. *Id.* at *2. This was so even though the insured had also contracted away the right to control the investigation of a claim, the handling of a claim, and the decision to resolve the matter before litigation. *Id.*

Judge Jordan thus determined that, given the policy language, the insurance company did not owe the insured a duty to defend.  "[T]he duty to defend does not arise where - as here - the language of the contract policy explicitly reserves the insurer the right to refuse to defend the insured."  *Id.* at *3.  He then granted partial summary judgment for the insurance company because even though the allegations of the complaint were sufficient to trigger the duty to defend, the insurance company had reserved the right to refuse to defend and there was thus no requirement that the insurance company defend under the policy.  *Id.*

Florida's Third District Court of Appeal followed the reasoning of *PT Indonesia* in *East Florida Hauling*, the only known Florida appellate court decision interpreting similar insurance policy "duty to defend" language.  In *East Florida Hauling*, the policy provided that the insurer had "the right to:  1. Settle the 'loss' with the owners . . . . 2. Provide a defense for legal proceedings [brought against the insured].  If provided, . . . ."  913 So.2d at 675.  The trial court determined this language created a right rather than a duty to defend, and granted summary judgment for the insurer because under the policy it owed no duty to the insured to defend.  *Id.* at 676.

The appellate court affirmed.  It found the language unambiguous and susceptible of only one interpretation, that the insurer had the right but not the duty to defend its insured.  *Id.* at 677.  The court agreed with the insurer who had argued that an insurer's duty was governed by the terms of the contract, and thus, "an insurance policy may relieve the insurer of any duty to defend, or give the insurer the right, but not the duty, to defend."  *Id.* (citing 14 Lee R. Russ & Thomas F. Segalia, Couch on Insurance 3D § 200.5 (1999)).  Citing *PT Indonesia* as well as cases from

other jurisdictions, the court recognized that "where policy language creates a *right* to defend, it is clear and unambiguous that it does not create a *duty* on the part of the insurer." *Id.* at 678.  Accordingly, the court affirmed the trial court's determination that the insurer owed no duty to defend under the policy.

Though Newport's counsel has gamely tried to argue that Judge Jordan reached the wrong conclusion, our own review of the issue compels us to agree with Judge Jordan's analysis in *PT Indonesia*.  His decision has not been superceded or withdrawn and we find it persuasive although it is not technically binding on us in this case.  *See Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) ("district court is not bound by another district court's decision, or even an opinion by another judge of the same district court").

Moreover, *PT Indonesia* is in line with decisions from other courts around the country.  *See, e.g., Save Mart Supermarkets v. Underwriters at Lloyd's London*, 843 F. Supp. 597, 602 (N.D. Cal. 1994) (an explicit option to join in the defense of claims against an insured directly contradicted any possible duty to join in the defense); *B & D Appraisals v. Gaudette Mach. Movers, Inc.*, 752 F. Supp. 554, 556 (D.R.I. 1990) (insurer had the right but not the duty to defend under an insurance policy with a "sole option" provision); *Centennial Ins. Co. v. Transitall Servs. Inc.*, Case No. 00 C 1383, 2001 WL 289879, at *3 (N.D. Ill. March 15, 2001); *Ohio Cas. Ins. Co. v. Carman Cartage Co., Inc.*, 636 N.W.2d 862, 866-67 (Neb. 2001).

Furthermore, we must follow the rationale and holding of *East Fla. Hauling*. "[A]bsent a decision from the state supreme court on an issue of state law, we are

bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently." *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002) (citing *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) ("[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court.") (internal citation omitted)).  We have not found, nor has Newport directed us to, any Florida Supreme Court decision that has dealt with the issue before us, nor any case in which that court intimated it would decide *East Fla. Hauling* differently.  Hence we are bound to follow the holding in *East Fla. Hauling*, i.e., that policy language that creates a *right* to defend does not create a *duty* to defend.

Whether Underwriters owes Newport a duty to defend must be determined solely from the allegations on the face of the complaint.  *PT Indonesia*, 2002 WL 561376, at *3; *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997) (a liability insurer's obligation to defend a claim made against its insured must be determined from the allegations of the complaint).  This requires us to compare the allegations of the Fourth-Party Complaint with the provisions of the Policy.  *PT Indonesia*, 2002 WL 561376, at *3.  As previously stated, the policy language at issue here reserves to Underwriters the right to defend, but it does not impose on Underwriters a duty to defend.  Because there is no duty to defend under the Policy, Newport cannot state a cause of action for breach of contract based on a failure to defend.

### 2.     *Duty to Indemnify*

Newport also alleges that Underwriters breached the Policy by failing to investigate and resolve the claim which is the subject of the Lawsuit, and that Underwriters has denied any responsibility for resolving the claim and otherwise has refused to accept and perform its contractually-assumed fiduciary duty to Newport. The relevant provision of the Policy reads:

**<u>INSURING AGREEMENT</u>**

> In consideration of the premium paid hereon . . ., the Underwriters hereby agree to indemnify [Newport], for ALL RISKS OF PHYSICAL LOSS OR DAMAGE FROM AN EXTERNAL CAUSE to lawful cargo in and/or on a truck whilst in [Newport's] cae, custody or control in the ordinary course of transit, . . . .

[D.E. 15-2 at 9].

The parties disagree about whether the Policy is an "indemnity for loss" policy or an "indemnity against liability" policy.   The difference between the two is significant:

> Under a liability policy the insurer is required to make payment although the insured has not yet suffered any loss, for by definition the purpose of the liability policy is to shield the insured from being required to make any payment on the claim for which he is liable.
>
> Under an indemnity contract, by way of contrast, the insurer (contracting party) is only required to indemnify or make whole the insured (indemnitee) after he has sustained actual loss, meaning after the insured (indemnitee) has paid or been compelled to make a payment, his action against the insurer (indemnitor) then being to recover the amount of such loss by way of indemnity.

*Hooks v. Southeast Constr. Corp.*, 538 F.2d 431, 433 (C.A. D.C. 1976) (citing 11 Couch on Insurance § 44:4 (R. Anderson 2d ed. 1963)).

Underwriters asserts that the Policy is an indemnity for loss policy, meaning it provides for indemnification to Newport only after Newport has become liable to pay and has actually paid for a loss.  Newport disputes this assertion, contending that the Policy is obviously an indemnity against liability policy, i.e., a liability insurance policy.  Newport suggests that this Policy has "all the classic earmarks of a liability policy," i.e., coverage for cargo claims, the right to control and settle or otherwise resolve claims with the owners of the cargo, and the right (not duty) to defend.  [D.E. 19 at 9].  However, Newport has not explained why a policy with these items must necessarily, automatically be a liability insurance policy.

We agree with Underwriters that the Policy is an indemnity for loss policy.  The Policy explicitly provides that Underwriters agrees to indemnify Newport for all risks of physical loss or damage.  [D.E. 15-2 at 9].  *See, e.g., Classic Concepts, Inc. v. Poland*, 570 So. 2d 311, 312 (Fla. 4th DCA 1990) (where the stated purpose of the insurance policy was "to indemnify the insured for their legal liability only to the amount which they are obligated to pay and do pay," court concluded the policy was clearly and unambiguously an indemnity for loss policy and it only obligated the insurer to indemnify the insured for the loss he was obligated to pay and actually paid).

Newport has also failed to plead facts sufficient to trigger Underwriter's duty to indemnify.  Newport did allege in the Fourth-Party Complaint that Underwriters failed to investigate and resolve the cargo claim and that it effectively denied Newport coverage, but it has not alleged that it has become obligated to pay and has paid for an alleged loss.  It has not pled that Underwriters has denied any claim for indemnity

under the Policy.  Newport thus has not stated a cause of action for breach of contract against Underwriters based on a duty to indemnify.

Because Newport has not stated a cause of action against Underwriters for breach of contract based on the duty to defend or to indemnify, we grant Underwriters' motion to dismiss Count II.

### B.   *Declaratory Judgment*

Newport claims the parties have a "contractual relationship involving real, present issues on which they have serious disagreements as to each party's duties, obligations and rights under the policy."  [D.E. 19 at 9].  Newport's declaratory judgment claim is based on the same facts as its breach of contract claim.  We have already determined that the Policy does not impose on Underwriters a duty to defend and that Newport has failed to plead facts sufficient to trigger Underwriters' duty to indemnify under the Policy.  We find, therefore, that there is no present case or controversy for us to resolve.  We therefore grant Underwriters' motion to dismiss Count I.

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** Fourth-Party Defendant's Motion to Dismiss the Fourth-Party Complaint [**D.E. 15**] is **GRANTED**.  The dismissal of the Fourth-Party Complaint, of course, does not preclude the filing of an indemnity action at a later date, when and if such an action accrues.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of April, 2009.

EDWIN G. TORRES
United States Magistrate Judge